**1:21-cv-00492**

*EXHIBIT 1*

 (https://www.traviscountytx.gov)

## District Clerk - AARO - Attorney Access to Records Online

# Details

Updated : Friday, June 4, 2021 4:36:58 AM

| | |
|---|---|
| Cause Number | D-1-GN-21-002063 |
| Style | SEN V CHARLES SCHWAB AND CO |
| Filed Date | 5/5/2021 |
| Court | 201 |
| Type | EMPLOYMENT (GEN LIT ) |
| Case Status | PENDING |
| Action/Offense | |
| Hearing Date | |

Request Documents (https://www.traviscountytx.gov/distr

New Search (/aaro/)

| Attorney | Type | Party - Full/Business | Party - Person |
|---|---|---|---|
| | DEFENDANT | CHARLES SCHWAB AND CO INC | |
| CALLAHAN CHARLES ASHLEY | PLAINTIFF | | SEN , PRAGYA |

| Date | Court | Party | Description | Category | Pages | |
|---|---|---|---|---|---|---|
| 5/6/2021 | 201 | DF | ISS:CITATION | ISSUANCE | 1 | Download (/aaro/Default/GetPdf?barCodeId=7587858) |
| 5/5/2021 | 201 | PL | ORIGINAL PETITION/APPLICATION | PET-PL | 12 | Download (/aaro/Default/GetPdf?barCodeId=7587362) |

Request Documents (https://www.traviscountytx.gov/district-clerk/records-request)

New Search (/aaro/)

© 2021 Travis County, Texas - All rights reserved.

5/5/2021 12:35 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-21-002063
Victoria Benavides

CAUSE NO. D-1-GN-21-002063

| | | |
|---|---|---|
| PRAGYA SEN<br>*Plaintiff,*<br><br>vs.<br><br>CHARLES SCHWAB & CO., INC<br>*Defendant.* | § § § § § § § § § § § § | IN THE DISTRICT COURT<br><br>201st<br><br>_____ JUDICIAL DISTRICT<br><br><br>TRAVIS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Pragya Sen, Plaintiff, and files this her Original Petition against Charles Schwab & Co., Inc. (hereinafter referred to as "Defendant" or "Schwab"), its affiliates, subsidiaries and other related entities, under any name by which they are known, and for her causes of action would show the Court as follows:

**Discovery Control Plan**

1. Plaintiff is seeking to recover more than $200,000 but less than $1,000,000. Discovery in this case is intended to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

**Parties**

2. Plaintiff Pragya Sen is a Texas citizen and resident who is a former employee of the Defendant.

3. Defendant Charles Schwab & Co., Inc. is a California corporation whose principal place of business, corporate headquarters, and nerve center are in Texas. Without limitation,

the center of corporate direction, control, and coordination for Defendant are all in Texas. Defendant may be served with citation through its registered agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, TX 75201.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter and the parties to this case and all conditions precedent to the filing of this suit have been met or waived and venue properly lies in Travis County, Texas. The Court's jurisdiction over this suit is proper pursuant to the Texas Commission on Human Rights Act, Tex. Lab. Code Ann. § 21.001 *et. seq.* The amount in controversy in this dispute is within the jurisdictional limits of this Court. All or a substantial part of the events giving rise to Plaintiff's claim occurred in Travis County, Texas.

5. All conditions precedent necessary for the filing of this case have been satisfied by Plaintiff.

## Factual Background

6. Schwab hired Mrs. Sen full-time in September 2018 as a Senior Scrum Master in Austin, Texas reporting to Susan Anderson, Senior Manager, Mobile Team. Mrs. Sen took on a spectrum of progressively and increasingly challenging roles and duties for the company. Mrs. Sen was (and still is) well respected in the industry. Mrs. Sen even considered Schwab part of her second home while employed because of how much she enjoyed being a successful female leading the way in a challenging field. Until she made multiple complaints to Human Resources, Mrs. Sen never had any write-ups, Performance Improvement Plans, or any other disciplinary history. She served and executed her role at Schwab exceptionally.

7. In July 2019, Ms. Anderson received a low score on a Employee Engagement Survey. As a result, she started off a staff meeting with Mrs. Sen and others by stating that she was upset over the news. Mrs. Sen viewed this as a minor red flag, yet she chose not to worry too much since she wanted to grow with the company.

8. Mrs. Sen and Ms. Anderson had a history of having one-on-one meetings on a weekly basis to discuss work related and general matters. During one of these one-on-ones in July 2019, Ms. Anderson asked Mrs. Sen if she was the one who gave her a low score on the Employee Engagement Review. Mrs. Sen refused to disclose any private information on this issue citing the "anonymous" nature of the survey, and suggested the areas of concern should be discussed and addressed as a team. This discussion was repeated in the next two one-on-one meetings, and eventually ended with Ms. Anderson threatening Mrs. Sen that there would be "consequences."

9. In August 2019, during Mrs. Sen's mid-year performance review, Ms. Anderson mentioned that her working from home one week in June while her husband was travelling for work (necessary because Mrs. Sen is a mother with small children), could affect her performance rating. This work from home exception was approved by another manager when Ms. Anderson was out of office. When reminded of this approval, Ms. Anderson said that the other manager should not have approved. Mrs. Sen stated those are not valid reasons for measuring her ability to deliver on her responsibilities. Ms. Anderson was visibly agitated and said, "I think you have mental issues" and "you should get yourself evaluated." In disbelief, Mrs. Sen asked her to clarify her statement. Ms. Anderson responded with "Yes, get yourself evaluated." Mrs. Sen did not feel comfortable continuing the conversation and immediately went over to report this to the

Vice President on the floor, Nathan Holm. At that point, Mr. Holm suggested that Mrs. Sen report her concerns to Human Resources. On August 12, 2019, Mrs. Sen made her first report to Human Resources, Case No. HRC0056516. She included details of the incident where Ms. Anderson said Mrs. Sen had "mental issues," other improper treatment, and the hostile work environment created by management's behavior.

10. In September 2019, Mrs. Sen successfully completed one year in her role. As Ms. Anderson continued to be Mrs. Sen's manager, she asked if there were other roles or managers in the company that may be available for her. Ms. Anderson did not respond in any way after Mrs. Sen made this suggestion, other than simply ignoring Mrs. Sen's request. By all accounts, Mrs. Sen was trying to remain an active employee while also considering any other career paths inside of Schwab. She also learned that her first complaint to Human Resources had been "Cancelled" without any follow up, interview, or additional information.

11. Around this same time, Mrs. Sen started realizing that Ms. Anderson was treating the male Scrum Masters more favorably. They were not scrutinized in the same fashion, there were no questions asked when they needed days off from work for any reason, and they were allowed to work from home for reasons that were denied to Mrs. Sen (*e.g.*, childcare, package delivery, dentist appointments, sickness, or other needs). Mrs. Sen asked Ms. Anderson a few times for such accommodations, and each time Ms. Anderson said "No." In fact, Ms. Anderson also said to Mrs. Sen, the only female Scrum Master on the team, "as a Scrum Master you have to always be present at the office." This rule did not apply to the male Scrum Masters.

12. On October 25, 2019, Mrs. Sen made a second report to Human Resources, Case No. HRC0076358, as nothing changed in Ms. Anderson's behavior after making the first report. All of Mrs. Sen's efforts to address concerns were disregarded while she continued to face reprimand for made-up or minor issues. Instead, Ms. Anderson's behavior became retaliatory towards Mrs. Sen. One example of retaliation is a "coaching memo" citing a few concerns that were not concerns for other employees. This did not amount to a PIP or other mandatory improvement plan. It was simply a way that Ms. Anderson could assert her control over Mrs. Sen. When Mrs. Sen questioned her reasoning, Ms. Anderson became visibly upset, made several demeaning remarks, and told Mrs. Sen to "pack your bags and leave the building." Mrs. Sen stepped away to avoid further confrontation. In her complaint to Human Resources, Mrs. Sen stated that she felt targeted by Ms. Anderson and was being "falsely accused of poor performance in retaliation for her receiving a poor manager rating/review. I am being unfairly singled out on the team and targeted despite delivering all my responsibilities in a timely manner and performing on par or better than my peers. My team can attest to this and I can provide data to back it up as well." Mrs. Sen also asked Human Resources for a neutral third party to help resolve the dispute, and asked that it not be "Cancelled" like her first complaint. This time there were other employees who could see how Ms. Anderson only singled Mrs. Sen out in front of an audience, or during further work-related matters. Ms. Anderson's treatment of Mrs. Sen was apparent to more than one employee of Schwab at this point in time.

13. On February 26, 2020, during the Annual Review, Ms. Anderson issued a lowered rating to Mrs. Sen in further retaliation. In fact, on this review, Ms. Anderson added

"inconsistently meets expectations" despite Mrs. Sen delivering on all her duties and releases during the year, and despite receiving all positive reviews from Mrs. Sen's stakeholders and team members (as recorded in the Workday tool which was available to Ms. Anderson). By way of example, Mrs. Sen took actions on every item mentioned in the "coaching memo," provided proof points, and documented rebuttals within a month after it was issued. Ms. Anderson did not reply or provide feedback.

14. In addition, Ms. Anderson did not award the remaining annual bonus payout to Mrs. Sen, did not provide Mrs. Sen a raise, and also informed Mrs. Sen that she could not seek roles or opportunities on other teams within Schwab. Ms. Anderson further stated to Mrs. Sen that her "career at Schwab was over" and that she "needed to look outside Schwab" for another job. Meanwhile, Mrs. Sen's counterparts, all male, did get these benefits from Ms. Anderson and were not told that their careers were "over." The preferential treatment towards male Scrum Masters over Mrs. Sen, being the only woman, could not be more apparent. The next day, Mrs. Sen reported Ms. Anderson's threat to Joe Balque, who was Ms. Anderson's manager.

15. During the first week of March 2020, Mrs. Sen requested a meeting with Ms. Anderson, Mr. Balque, and David Chen (who was Mr. Balque's manager) to review and correct the inaccuracies in the Annual Review given by Ms. Anderson. Mrs. Sen sent calendar invitations on Outlook based on their availability. However, the meeting was repeatedly cancelled and postponed by Ms. Anderson over the next two weeks, and ultimately never occurred. Upon repeated inquiry, Ms. Anderson stated in an email that the meeting would never happen.

16. On March 13, 2020, Ms. Anderson, instead of agreeing to the meeting, pulled Mrs. Sen aside and issued a "written warning" about several new performance and behavioral issues that needed to be corrected immediately. Again, these were never mentioned during the Annual Review two weeks prior and were false action items in an effort to push Mrs. Sen out. Furthermore, Ms. Anderson would drop anything she was doing on a moment's notice when the male Scrum Masters had any issues to provide feedback and help, completely the opposite to Ms. Anderson's behavior as a manager towards Mrs. Sen.

17. On March 16, 2020, Mrs. Sen acknowledged reading over Schwab's "Employee Behavior" policy. During their next one-on-one meeting on March 18, 2020, Mrs. Sen asked Ms. Anderson how she wanted her to address the concerns in the "written warning," including the actions Mrs. Sen should take. Ms. Anderson said Mrs. Sen must review "every" action and query only with Ms. Anderson, while not seeking assistance from the male Scrum Masters. When Mrs. Sen raised the concern that Ms. Anderson may not always be available, Ms. Anderson became enraged, then banged the desk with her hands several times. Ms. Anderson then screamed, "Inputs should be from me, not from someone else. You come to me and follow my instructions. You will come to me and only to me!" Ms. Anderson then shouted for Mrs. Sen to look for employment elsewhere outside of Schwab. These layers of retaliatory behavior simply did not exist in Ms. Anderson's activity with the male Scrum Masters.

18. On March 24, 2020, Mrs. Sen made a third complaint to Human Resources, Case No. HRCO123546, which this time also included ways that all the other Scrum Masters on her team—all of whom were male—received more favorable treatment. Mrs. Sen stated

in this complaint that she was being discriminated against based on her gender, perceived "mental health" issues, and also facing retaliation for questioning her manager's unfair and biased treatment. Mrs. Sen specifically used the words "discrimination" and "retaliation." She also stated, "I believe I have been consistently measured on a different yardstick to my detriment as compared to my male Scrum Master colleagues." She then provided a long and detailed account of the examples discussed previously in this petition. Mrs. Sen also detailed unequal professional development opportunities (Mrs. Sen was denied approval to attend the "Global Scrum Alliance" conference), unfair treatment in the form of Defendant providing male employes flexibility in the use of computer equipment, and biased comments regarding Mrs. Sen's role as a mother. Specifically, Mrs. Sen reported Ms. Anderson saying, "as mothers we have to make sacrifices." Of course, Ms. Anderson and Defendant were not requiring those same "sacrifices" from comparable male employees.

19. On April 22, 2020, Human Resources sent Mrs. Sen a memo to inform her that Human Resources was closing the case out since there were allegedly "no policy violations."

20. On May 13, 2020, an "Employee Engagement" survey email notice was sent, which indicated that it was available for Mrs. Sen to complete from May 13, 2020 through May 27, 2020. Ms. Anderson knew that the survey was out, as this is a standard protocol for Schwab, and it even included manager feedback questions. Despite Human Resources closing out her third case just a few weeks before, Mrs. Sen still acted professionally and as a valuable team player. She attended a one-on-one with Ms. Anderson that day after the email notice was sent. Ms. Anderson told Mrs. Sen that she was not meeting performance expectations with no specific examples, and she threatened to fire Mrs. Sen.

Ms. Anderson claimed the power to dos so because of the "written warning" previously issued. This was an attempt to instill fear prior to Mrs. Sen completing the Employee Engagement survey. Immediately following this dialog, Mrs. Sen sent an additional email to Human Resources as an update to Case No. HRCO123546. Mrs. Sen stated everything that had just transpired to highlight the continued harassment and retaliatory behavior.

21. On May 14, 2020, Schwab shockingly terminated Mrs. Sen's employment. This action was outrageous because it occurred without any valid reason, was a mere three weeks after the third formal complaint to Human Resources was closed, one day after the "Employee Engagement" survey came out, and hours after Mrs. Sen provided an additional example of retaliation to Human Resources based on Ms. Anderson's behavior. At 12:00 p.m., Ms. Anderson called Mrs. Sen and said that she was being fired based on alleged "performance," which is a blatant lie. In reality, Ms. Anderson panicked because she was fearful of her own job being in jeopardy due to the open survey being available. Ms. Anderson chose a knee-jerk reaction to double down on her discrimination and get Mrs. Sen out of the way. Unfortunately for Defendant and Ms. Anderson, the numbers do not lie. Mrs. Sen was the only female of six Scrum Masters, and she had provided a well-documented pattern of discriminatory behavior and retaliation.

22. Ms. Sen's termination itself is further evidence of Schwab's gender bias towards Mrs. Sen, retaliation for reporting Ms. Anderson over three times, never remedying the situation for Mrs. Sen, never allowing Mrs. Sen to find other roles within in the company after seeing Ms. Anderson's behavior, and never allowing Mrs. Sen to work under a different manager who would not treat the males on the team more favorably.

23. Any reason that Schwab comes up with after–the–fact for terminating Mrs. Sen will be demonstrably pretextual. Whether or not Schwab wants to admit this fact, the company has a bias against women in certain teams. The timing between each of Mrs. Sen's formal complaints to Human Resources, the complaints being closed, continued retaliation from Ms. Anderson, and Mrs. Sen's termination are all within a "short temporal proximity" of time.

## Statement of Claims

<u>Texas Commission on Human Rights Act</u>

24. In this petition, Plaintiff is not seeking any remedy under any federal statute.

25. Through the actions summarized above, as well as other actions that are not detailed in this pleading, Defendant has engaged in unlawful employment practices in violation of the Texas Commission on Human Rights Act, Tex. Lab. Code Ann. § 21.001 *et. seq.* The Defendant's discriminatory treatment of Mrs. Sen and the termination of her employment was motivated by and due to her sex, female.

26. The effect of Defendant's wrongful conduct has been to deprive Mrs. Sen of equal employment opportunities and to otherwise affect her status as an employee based on her sex in violation of the TCHRA.

27. The unlawful practices complained of above were intentional.

28. The unlawful employment practices complained of above were done with willfulness, malice, and/or reckless indifference to the statutorily protected rights of Plaintiff. Accordingly, punitive damages are appropriate in this case.

## Damages

29. As a consequence of the foregoing facts and the willful and malicious nature of the

wrongs committed against the Plaintiff, Plaintiff has suffered and will suffer past, present, and future economic loss, for which Plaintiff pleads to recover at trial. The backpay and reinstatement/front pay damages sought are within the jurisdictional limits of this court.

30. As a consequence of the foregoing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff has suffered and will suffer past, present, and future mental anguish, for which Plaintiff pleads to recover at trial. The damages for said mental anguish and other compensatory damages sought are within the jurisdictional limits of this court.

31. As a consequence of the foregoing clear and convincing facts and the willful and malicious nature of the wrongs committed against the Plaintiff, Plaintiff is entitled to punitive damages.

32. As a consequence of the wrongful conduct of the Defendant as described above, Plaintiff has been required to retain legal counsel to prosecute this case. Plaintiff is entitled to reasonable attorneys' fees, expert fees, other litigation expenses, and court costs.

### Jury Demand

33. Plaintiff respectfully demands that this Court impanel a lawful jury to hear this case, and has paid the applicable fee.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear to answer herein and that upon final hearing, the Court enter judgment in favor of Plaintiff against Defendant in an amount in excess of the minimum jurisdictional limits of this Court, for compensatory damages, back and front pay, damages for mental anguish, punitive damages,

reasonable attorneys' fees, costs of court, and pre- and post-judgment interest at the highest rate allowed by law, and for such other and further relief, general or special at law or in equity, to which Plaintiff may be justly entitled.

        Respectfully submitted,

        /s/C. Ashley Callahan
        C. Ashley Callahan
        State Bar No. 24027545
        LAW OFFICES OF C. ASHLEY CALLAHAN, P.C.
        The Haehnel Building
        1101 East 11th Street
        Austin, TX 78702
        Telephone: 512.817.3977
        Telecopier: 512.287.3127
        acallahan@callahanlawoffices.com

        Nicole Conger
        The Law Office of Nicole Conger, PLLC
        State Bar No. 24064571
        13809 Research Blvd., Suite 500
        Austin, Texas 78750
        (512) 413-4260
        nicole@nicoleconger.com

        **ATTORNEYS FOR PLAINTIFF**

CITATION
THE STATE OF TEXAS
**CAUSE NO. D-1-GN-21-002063**

PRAGYA SEN
, Plaintiff

vs.

CHARLES SCHWAB & CO INC
, Defendant

TO: CHARLES SCHWAB AND CO INC
BY SERVING ITS REGISTERED AGENT CT CORPORATION SYSTEM
1999 BRYAN ST STE 900
DALLAS, TEXAS 75201

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the PLAINTIFF'S ORIGINAL PETITION of the PLAINTIFF in the above styled and numbered cause, which was filed on MAY 5,2021 in the 201ST JUDICIAL DISTRICT COURT of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, May 06, 2021.

REQUESTED BY:
CHARLES ASHLEY CALLAHAN
THE HAEHNEL BUILDING
1101 E 11TH ST
AUSTIN, TX 78702-1908
BUSINESS PHONE:(512)817-3977   FAX:(512)287-3127

Velva L. Price
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, TX 78701

PREPARED BY: VICTORIA BENAVIDES

------------ **R E T U R N** ------------

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at _____ within the County of _____ on the _____ day of _____, _____, at _____ o'clock ____M., by delivering to the within named _____, each in person, a true copy of this citation together with the PLAINTIFF'S ORIGINAL PETITION accompanying pleading, having first attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

Sworn to and subscribed before me on the

_____ day of _____, _____.

_____
Notary Public, THE STATE OF TEXAS

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____ County, Texas

D-1-GN-21-002063                    SERVICE FEE NOT PAID                    P01 - 000106350

CAUSE NO. D-1-GN-21-002063

| | | |
|---|---|---|
| PRAGYA SEN, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 201ST JUDICIAL DISTRICT |
| | § | |
| CHARLES SCHWAB & CO., INC., | § | |
| | § | |
| Defendant. | § | TRAVIS COUNTY, TEXAS |

## DEFENDANT'S ORIGINAL ANSWER AND DEFENSES TO PLAINTIFF'S ORIGINAL PETITION

Defendant CHARLES SCHWAB & CO., INC ("Defendant") files this Original Answer and Defenses to the Original Petition filed by Plaintiff PRAGYA SEN ("Plaintiff"), as follows:

### I. GENERAL DENIAL

Pursuant to Texas Rule of Civil Procedure 92, Defendant generally and specifically denies each and every allegation contained in Plaintiff's Original Petition and any amendment or supplement thereto, and demands strict proof thereof. With respect to any claim by Plaintiff for punitive damages, Defendant demands strict proof thereof by clear and convincing evidence.

### II. DEFENSES

Without assuming any burden of proof that would otherwise rest with Plaintiff, Defendant asserts the following defenses, including affirmative defenses, as follows:

1. Plaintiff's damages, if any, are barred in whole or in part by the doctrines of estoppel, unclean hands, and/or after-acquired evidence.

2. Without conceding Plaintiff has suffered any damages because of any alleged wrongdoing by Defendant, Plaintiff has failed to mitigate or minimize the alleged damages and is therefore barred, in whole or in part, from the recovery of damages.

3. Defendant is entitled to an offset for any earnings since Plaintiff's employment ended, including payments received from insurance carriers, workers' compensation benefits, or unemployment compensation benefits.

4. Plaintiff's claims for compensatory and punitive/exemplary damages are capped or limited by applicable law, including Chapter 41 of the Texas Civil Practice and Remedies Code and common law.

5. All employment decisions made regarding or affecting Plaintiff were based upon legitimate, non-discriminatory, and non-retaliatory reasons.

6. Plaintiff's claims for exemplary damages are barred because the alleged acts or omissions of Defendant, even if proven, do not rise to a level required to sustain an award of exemplary damages and do not evidence malicious, reckless or fraudulent intent to deny Plaintiff's protected rights, and are not so wanton and willful as to support an award of exemplary damages.

7. Plaintiff's claims for exemplary damages are barred to the extent that the imposition of exemplary damages would constitute a denial of due process under the United States Constitution and the Constitution of the State of Texas.

8. Defendant engaged in good faith efforts to comply with all applicable laws. Moreover, the conduct complained of by Plaintiff, if performed or carried out, was performed or carried out in good faith based upon reasonable grounds for believing such conduct was not in violation of state or federal law, and therefore, Plaintiff fails to state a claim for punitive or exemplary damages.

9. With respect to some or all of Plaintiff's claims, the Petition fails to state a claim upon which relief may be granted.

10. At all times during Plaintiff's employment, Plaintiff was employed at-will and could be discharged with or without notice and with or without cause. There were no contracts or agreements that altered Plaintiff's at-will employment status.

11. Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to exhaust administrative remedies.

12. Plaintiff's claims are barred, in whole or in part, to the extent they exceed the scope or are inconsistent with any charge(s) of discrimination Plaintiff filed with the EEOC or TWC.

13. As a result of Plaintiff's unreasonable delay in asserting Plaintiff's rights, Defendant has suffered a good faith change of position to Defendant's detriment. Therefore, whatever right Plaintiff might otherwise have had to bring a timely action against Defendant is barred by laches.

14. If any improper, illegal, discriminatory, or retaliatory actions were taken by any of Defendant's employees against Plaintiff (which Defendant denies), they were outside the course and scope of that employee's employment, contrary to Defendant's policies, and were not ratified, confirmed, or approved by Defendant. Thus, any such actions cannot be attributed or imputed to Defendant.

15. Plaintiff's claims fail because Defendant exercised reasonable care to prevent and remediate promptly any unlawful behavior and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant or to avoid harm otherwise.

16. Plaintiff's claims are barred, in whole or in part, because Defendant would have taken the same action in the absence of any alleged impermissible motivating factor(s).

17. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

18. Defendant specifically reserves the right to assert any other appropriate defenses, including affirmative defenses, to Plaintiff's claims as the need for such defenses becomes known.

## III.   PRAYER FOR RELIEF

**WHEREFORE,** Defendant respectfully requests that this Court dismiss Plaintiff's Original Petition with prejudice and that Defendant be awarded Defendant's costs, attorneys' fees, and any other relief to which Defendant may be entitled.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ Derek T. Rollins*
Derek T. Rollins
Texas Bar No. 24058079
Derek.Rollins@ogletreedeakins.com
Kathleen J. Sanz
State Bar No. 24119280
Kathleen.Sanz@ogletree.com
301 Congress Avenue, Suite 1150
Austin, Texas 78701
Telephone: (512) 344-4700
Fax: (512) 344-4701

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true copy of the foregoing has been forwarded by a method prescribed by the Texas Rules of Civil Procedure, on this 4th day of June, 2021 to:

| | |
|---|---|
| C. Ashley Callahan<br>LAW OFFICES OF C. ASHLEY CALLAHAN<br>The Haehnel Building<br>1101 East 11th Street<br>Austin, Texas 78702<br>acallahan@callahanlawoffices.com | Nicole Conger<br>THE LAW OFFICE OF NICOLE CONGER, PLLC<br>401 Congress Avenue, Suite 1540<br>Austin, Texas 78701<br>nicole@nicoleconger.com |

            */s/ Derek T. Rollins*
            Derek T. Rollins

47371490.1